ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

2015 MAY 11  PM 12: 36

CLERK
SO. DIST. OF GA.

CHRISTINA BAZEMORE, on behalf
of herself and all others
similarly situated,

    Plaintiff,

v.

JEFFERSON CAPITAL SYSTEMS, LLC,

    Defendant.

CV 314-115

# ORDER

Before the Court is Defendant Jefferson Capital Systems, LLC's ("Jefferson Capital") motion to compel arbitration. (Doc. no. 17.) Upon consideration of the parties' briefs and oral argument held on February 23, 2015, the motion is **DENIED** for the reasons set forth herein.

## I. INTRODUCTION

Plaintiff Christina Bazemore ("Bazemore") has filed a putative consumer class action alleging that Jefferson Capital violated the law by systematically filing proofs of claim in bankruptcy cases to recover debts which were barred by a statute of limitations defense. Bazemore alleges that this conduct violates the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 et seq.,[1] and constitutes unjust enrichment. Jefferson Capital contends that Bazemore's claims are subject to mandatory arbitration.

## II. BACKGROUND

On November 18, 2005, Bazemore applied on-line for a credit card, the Imagine MasterCard, with a credit limit of $300. (Ryan Aff. ¶¶ 5-6 & Ex. B.) The credit card was issued by First Bank of Delaware. (Id. ¶ 4.) The credit card account was immediately charged a $150 enrollment fee (id., ex. B) which, according to Bazemore, is not disclosed until the first bill is mailed to the card holder. Bazemore charged $148.03 to the card in the first three weeks. (Id.) Thus, according to the statement with a closing date of December 21, 2005, Bazemore owed $299.69. (Id.) On December 22, 2005, the account was charged a $9.95 account maintenance fee that caused Bazemore to exceed the $300 limit before her first payment became due.[2] (Id.) Bazemore paid the minimum payment of $20.00. The next billing statement, with a closing date of January 23, 2006, reflected $125 in fees, including a $35

---

[1] See Crawford v. LVNV Funding, LLC, 758 F.3d 1254 (11th Cir. 2014) (recognizing that a debt collector who files a time-barred proof of claim in bankruptcy court violates the FDCPA).

[2] Bazemore would have one more single charge of $98.94 on February 15, 2006. (Ryan Aff., Ex. B.)

"overlimit fee." (Id.) Subsequently, Bazemore incurred monthly fees, typically between $35 to $80. By May 2007, Bazemore owed $1,153.18 on the account. (Id.) At that time, she had charged only $247.01 on the card and had made payments totaling $314.

In 2013, Bazemore filed for Chapter 13 protection in the United States Bankruptcy Court. On January 11, 2014, Jefferson Capital filed a Proof of Claim in her bankruptcy case to collect $1,153.18 owed on the credit card account. The last payment date on the credit card account was October 5, 2006; thus, the debt was time-barred effective October 5, 2012. (See Pl.'s Resp. in Opp'n, Ex. A; Am. Compl. ¶¶ 19-20.)

Jefferson Capital claims to own the debt and therefore to be a party to an arbitration provision contained in the Cardholder Agreement purportedly provided to Bazemore. Jefferson Capital explains further that Atlanticus Services Corporation ("Atlanticus"), formerly known as CompuCredit Corporation ("CompuCredit"), sent new credit card applicants a "Welcome Kit" within ten business days of the application date. (Ryan Aff., ¶ 7.) According to the executive correspondence manager, Mr. Gregory Ryan, "Atlanticus provided certain contractual services related to the marketing of the [Imagine MasterCard] credit card for and on behalf of [First Bank of Delaware]." (Id. ¶ 4.) Mr. Ryan attests that the

3

Welcome Kit contained a Cardholder Agreement, which contains the following arbitration provision:

> Any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to your Account, any transferred balances or this Agreement (collectively, "Claims"), upon the election of you or us, will be resolved by binding arbitration pursuant to this Arbitration Provision and the Code of Procedure ("NAF Rules") of the National Arbitration Forum ("NAF") in effect when the Claim is filed. If for any reason the NAF cannot, will not or ceases to serve as arbitration administrator, we will substitute another nationally recognized arbitration organization utilizing a similar code of procedure.
>
> UPON SUCH ELECTION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE IN COURT THE CLAIM BEING ARBITRATED, INCLUDING IN A JURY TRIAL, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE NAF RULES. IN ADDITION, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS RELATING TO ANY CLAIM SUBJECT TO THE ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING, OTHER RIGHTS AVAILABLE TO YOU IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
>
> The term "Claims" covered by this Arbitration Provision is to be given the broadest possible meaning, and includes, by way of example and without limitation, (I) Claims arising from the application for or issuance, use, terms, change in terms or addition of terms, closing or collection of your Account or this Agreement, or from advertisements, promotions or oral or written statements related to your Account, including any Claims regarding information obtained by us from, or reported by us to, credit reporting agencies or others, or Claims related to the goods or insurance or other services purchased under your Account; (II) Claims between you and our parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, agents, independent contractors,

>       employees, officers, directors or representatives
>       arising from your Account or this Agreement; and
>       (III) Claims regarding the validity, enforceability
>       or scope of this Arbitration Provision or this
>       entire Agreement.

(Id., Ex. A.)

On March 31, 2008, pursuant to an alleged Bill of Sale, Atlanticus sold all of its right, title and interest to a pool of accounts to Defendant Jefferson Capital. (Simon Aff. ¶ 7.) Jefferson Capital claims that Bazemore's credit card account fell within that pool of accounts. (Id.; see also Weinreis Aff. ¶¶ 8-9.)

After Jefferson Capital filed its stale proof of claim, Bazemore filed this FDCPA lawsuit in state court, but the case was removed to this Court on October 13, 2014. Thereafter, Bazemore amended her complaint. The parties jointly requested a discovery period of twelve months because of the potentially large number of class participants. Before the Court could address the discovery issue, Defendant Jefferson Capital moved to compel arbitration of Bazemore's FDCPA and unjust enrichment claims as an alleged assignee of all right, title, and interest to Bazemore's account.

On January 9, 2015, all discovery in this matter was stayed pending resolution of the motion to compel arbitration. After a briefing period, the Court heard oral argument on the motion on February 23, 2015. Thus, the parties have had ample

opportunity to address the merits of the motion to compel arbitration, and it is ripe for adjudication.

## II.  APPLICABLE LEGAL STANDARDS

The subject Arbitration Provision provides that it shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. The Federal Arbitration Act ("FAA") allows an action to compel arbitration "under a written agreement for arbitration." 9 U.S.C. § 4. A district court must compel arbitration if there is a valid agreement to do so. Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1331 (11th Cir. 2005); Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992) (citing 9 U.S.C. §§ 2 & 3.) "Federal policy requires [courts] to construe arbitration clauses generously, resolving all doubts in favor of arbitration." Becker v. Davis, 491 F.3d 1292, 1305 (11th Cir. 2007), abrogated on other grounds by Arthur Anderson LLP v. Carlisle, 556 U.S. 624 (2009); see Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration.").

"The FAA reflects the fundamental principle that arbitration is a matter of contract" and "places arbitration agreements on an equal footing with other contracts." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). In

construing arbitration agreements, courts apply state-law principles relating to contract formation, interpretation and enforceability. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) ("[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.").

Finally, motions to compel arbitration are reviewed under the standard for summary judgment. Johnson v. KeyBank Nat'l Assoc., 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "'a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'" (quoting Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785-86 (11th Cir. 2008))). Thus, a court can consider information outside the pleadings for purposes of resolving the motion.

### III. LEGAL ANALYSIS

As stated, Defendant Jefferson Capital contends that the arbitration provision in the Cardholder Agreement is valid and enforceable and covers the FDCPA and unjust enrichment claims of Bazemore. Bazemore resists arbitration, arguing that 1) Jefferson Capital has not proven to be the assignee of the

arbitration provision and therefore cannot enforce its terms; 2) she did not agree to the arbitration provision; 3) the arbitration provision is no longer enforceable between the parties; and 4) the arbitration provision is procedurally and substantively unconscionable. As explained below, the Court cannot sustain Bazemore's objection to arbitration on these particular grounds; however, because Bazemore's FDCPA claims fall outside the scope of the arbitration provision, the Court will not compel arbitration of her FDCPA claims.

A.  The Parties to the Arbitration Provision

A point worth noting again: "[A]rbitration is a matter of contract . . . ." AT&T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). The "strong federal policy favoring arbitration . . . does not apply to the determination of whether there is a valid agreement to arbitrate *between the parties*." Brown v. Pac. Life Ins. Co., 462 F.3d 384, 396 (5th Cir. 2006) (citation omitted) (emphasis added). Stated another way, where the parties have not agreed to arbitrate, a court cannot compel them to arbitration. See First Benefits, Inc. v. Amalgamated Life Ins. Co., 2014 WL 1255200 (M.D. Ga. Mar. 26, 2014) ("As a general rule, 'the right to compel arbitration does not extend to a party that has not signed the agreement pursuant to which arbitration is sought unless the right of the nonsignatory is expressly provided for

8

in the agreement.'" (quoting Greater N.Y. Mut. Ins. Co. v. Rankin, 298 A.D.2d 263, 263 (N.Y. App. Div. 2002)). Here, the parties to the Cardholder Agreement containing the arbitration provision are the cardholder, Bazemore, and the First Bank of Delaware ("we" or "us") and its successors and assigns. (Ryan Aff., Ex. A, at 1.) Jefferson Capital is not an original party to the contract; rather, Jefferson Capital relies upon its status as an assignee to compel arbitration. Indeed, the arbitration provision defines claims subject to arbitration to include claims of First Bank of Delaware's "successors" and "assigns." (Id., Ex. A, at 4.) Thus, if Jefferson Capital is a successor or assignee, it may enforce the arbitration provision.[3]

As the party seeking to compel arbitration, Jefferson

---

[3] Jefferson Capital would have this Court refer the issue of whether it is a party to the arbitration provision to arbitration pursuant to the delegation clause. (See Ryan Aff., Ex. A (defining arbitrable claims to include those "regarding the validity, enforceability or scope of" the arbitration provision).) A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). Thus, "gateway" claims have to be resolved by an arbitrator, not a court, in the face of a valid delegation clause. However, if Jefferson Capital is not a party to the arbitration provision, it is a also not a party to the delegation clause contained therein, and thus, it cannot call for its enforcement. That is, the Court must address the *existence* of an arbitration agreement between the parties, which is different from challenges to the validity, enforceabilty, and scope once the arbitration agreement is determined to exist.

9

Capital has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence, just as a party relying upon a contract has the burden of proving its existence and its terms under state law. See, e.g., Grant v. Houser, 469 Fed. App'x 310, 315 (5th Cir. 2012); Gentry v. Beverly Enters.-Ga., Inc., 714 F. Supp. 2d 1225, 1229 (S.D. Ga. 2009); Swanstrom v. Wells Fargo Bank, 754 S.E.2d 786, 788 (Ga. Ct. App. 2014).

As briefly explained in the preceding section, Jefferson Capital asserts that it acquired all right, title and interest in Bazemore's account to include the arbitration provision by assignment. The evidence provided by Jefferson Capital with its brief in support of its motion to compel arbitration demonstrated certain weaknesses in the chain.[4] However, any

---

[4] The initial evidence produced by Jefferson Capital to show that First Bank of Delaware assigned the Cardholder Agreement to it consisted only of Mr. Ryan's averments that Atlanticus "provided certain contractual services related to the *marketing* of the credit card" to First Bank of Delaware. (Ryan Aff. ¶ 4 (emphasis added).) Mr. Ryan did not explain how Atlanticus, formerly CompuCredit, *acquired* all rights, title and interest in the credit card account from First Bank of Delaware in order to convey it to Jefferson Capital. Further, Jefferson Capital contended that it had purchased a "pool of accounts" from Atlanticus, thereby receiving "all rights, title and interest" in Bazemore's account. (Simon Aff. ¶ 7.) Jefferson Capital attached a single page "Bill of Sale," unsigned by Jefferson Capital, evidencing a sale between CompuCredit and Jefferson Capital. (Simon Aff., Ex. A.) The Bill of Sale purportedly lists accounts on "Schedule 1," but Schedule 1 is not attached. Thus, there was no evidence that Bazemore's account was among those accounts sold by CompuCredit to Jefferson Capital.

10

failure of proof has been resolved through the evidence submitted with its reply brief, and the Court now finds that Jefferson Capital has established by a preponderance of the record evidence that it owns Bazemore's credit card account as an assignee.

To establish the first link between First Bank of Delaware and CompuCredit, a predecessor in interest to Atlanticus, Jefferson Capital refers the Court to an Affinity Card Agreement entered into between the companies on February 16, 2005. (Def.'s Reply Br., Ex. A.[5]) The Affinity Card Agreement provides that, on the last business day of each calendar month, CompuCredit would receive all right, title and interest to any "Charged-off Accounts." (Id. § 2.16.) Thus, when First Bank of Delaware "charged off" Bazemore's account on May 22, 2007, the account was transferred to CompuCredit pursuant to the Affinity Card Agreement. (Def.'s Reply Br. at 6-7 & n.4; Ryan Aff. of Feb. 12, 2015, ¶ 6; Weinreis Aff. ¶ 9.)

---

[5] Bazemore complains that the Affinity Card Agreement is unexecuted; however, Jefferson Capital provides a viable internet link to the Agreement's public filing with the Securities Exchange Commission. (Def.'s Reply Br. at 7 n.4.) Given the balance of evidence offered by Jefferson Capital in establishing its link to the First Bank of Delaware against Bazemore's lack of any evidence that the necessary link does not exist, the Court finds by a preponderance of the evidence that the Affinity Card Agreement existed between First Bank of Delaware and CompuCredit.

Then, through the affidavit of Ms. Jennifer J. Weinreis of Jefferson Capital, Jefferson Capital shows that Bazemore's account was included in a pool of accounts sold by CompuCredit to Jefferson Capital pursuant to a Financial Asset Sale Agreement and a Bill of Sale, executed on March 31, 2008. (Weinreis Aff. ¶ 8 & Exs. A & B.) This time, the Bill of Sale includes the portion of Schedule 1 referencing an account ending in the same last four digits of Bazemore's account with a balance of $1153.18. (Id., Ex. B.)

Upon this evidence, the Court finds by a preponderance of the evidence that Jefferson Capital acquired its right, title and interest to Bazemore's account, to include the Cardholder Agreement containing the arbitration provision. Thus, Jefferson Capital may enforce the arbitration provision but only to the extent that there was a valid, enforceable agreement between Bazemore and First Bank of Delaware.

B.   The Delegation Clause

Having determined that Jefferson Capital may seek to enforce the arbitration provision in the stead of First Bank of Delaware, the Court must now turn to Bazemore's other challenges to its enforcement. Bazemore argues that the arbitration provision is unenforceable because she never contracted with First Bank of Delaware in the first instance to arbitrate the claims arising out of her credit card

account. Here, Bazemore points out that there is no evidence that she had ever received a copy of the Cardholder Agreement with the arbitration provision. Also, Jefferson Capital has not submitted any evidence as to the content of the on-line application and what Bazemore may have agreed to at that time. Instead, Jefferson Capital can only say that "a *form of*" the Cardholder Agreement "would have been sent" to Bazemore approximately ten days after her on-line application was submitted. (Ryan Aff. ¶¶ 7-8.) Bazemore never signed the Cardholder Agreement. Thus, there is no evidence that Bazemore ever saw much less read the arbitration provision. Bazemore's argument in this regard closely aligns to her assertion that the arbitration provision is procedurally unconscionable.

Threshold issues of arbitrability, such as enforceability and conscionability, are typically decided by the court. Granite Rock Co. v. Int'l Bhd. of Teamsters 561 U.S. 287, 296 (2010); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). However, as pressed by Jefferson Capital throughout its arguments, the arbitration provision in this case contains a delegation clause. The United States Supreme Court has held that "parties can agree

13

to arbitrate 'gateway' questions of arbitrability" through a delegation clause. Rent-A-Center, 561 U.S. at 68-69.

In order to avoid the application of a delegation clause, a party must specifically challenge the delegation clause. Id. at 72. If the opposing party fails to challenge the delegation clause directly, then the court must enforce the provision and leave "gateway" issues such as validity and enforceability to the arbitrator. Id.; In re Checking Account Overdraft Litig. MDL No. 2036, 674 F.3d 1252, 1256 (11th Cir. 2012) (finding party waived argument that delegation provision was unconscionable by not specifically challenging it before the district court).

In this case, the parties agreed to arbitrate issues "regarding the validity, enforceability or scope" of the arbitration provision. Bazemore does not challenge the delegation clause specifically.[6] Further, Bazemore's claim that she did not agree to arbitrate because she never saw the provision and any argument respecting the conscionability of the agreement falls within the delegation clause; therefore, this Court cannot resolve these issues.[7] See Rent-A-Center,

---

[6] In fact, Bazemore's brief and oral argument are noticeably bereft of any mention of the delegation clause.

[7] Bazemore's substantive unconscionability argument meets the same fate. So, too, does Bazemore's assertion that arbitration cannot be compelled for time-barred claims. More specifically, Bazemore contends that the arbitration provision

14

561 U.S. at 72-73 (finding defendant's unconscionability arguments did not specifically challenge the delegation clause where they were directed at the "entire agreement" and did not mention delegation).

Although the parties delegated gateway issues of arbitrability to the arbitrator, the presiding judge is constrained to observe that Bazemore's unconscionability arguments are appealing if unavailing. Indeed, to bind Bazemore to an inconspicuous (in fact, buried) comprehensive arbitration provision in an agreement that is not contemporaneously given to her with the credit application is, in my view, itself unconscionable.

### C. The FDCPA Claims

There is one remaining challenge that Bazemore touches upon that the Court finds controlling. In brief and oral argument, Bazemore argues that her FDCPA claims are outside the scope of the arbitration provision. (See Pl.'s Resp. in

---

ceased to be enforceable against her on October 5, 2012, six years after the date of her last payment on the credit card account. Bazemore argues that in the Eleventh Circuit, arbitration cannot be compelled for "disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." (Pl.'s Br. at 11-12 (quoting Klay v. All Defendants, 389 F.3d 1191, 1203 (11th Cir. 2004).) Bazemore's argument in this regard, however, constitutes an enforceability challenge to the arbitration provision, which falls within the delegation clause and thus must be directed to and resolved by an arbitrator.

Opp'n, at 12-13 ("The arbitration provision does not provide notice to the Plaintiff that she . . . [may] only vindicate her federal statutory rights through an arbitration procedure.").) This contention as to the scope of the arbitration provision might seem to fall within the delegation clause. However, the Court is persuaded by the reasoning of two federal circuit courts (the Eleventh Circuit has not addressed this point) that have held that a gateway issue that is "wholly groundless" should not be subject to arbitration. See Douglas v. Regions Bank, 757 F.3d 460 (5th Cir. 2014); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366 (Fed. Cir. 2006).

These circuit courts admonished that the mere existence of a delegation clause does not require that all claims be sent to gateway arbitration. Douglas, 757 F.3d at 462. Rather, there must be "plausible arguments that the dispute [is] covered by the agreement." Id. (citing Agere Sys., Inc. v. Samsung Elecs. Co., 560 F.3d 337, 340 (5th Cir. 2014)). The Federal Circuit explained the appropriate analysis as follows:

> If the court concludes that the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule that the "question of arbitrability . . . is . . . for judicial determination" applies and the court should undertake a full arbitrability inquiry in order to be "satisfied" that the issue involved is referable to arbitration. If, however, the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second,

> more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless."

Qualcomm Inc., 466 F.3d at 1371 (quoted sources omitted). In adopting the Qualcomm test, the Fifth Circuit reasoned that it "most accurately reflects the law-that what must be arbitrated is a matter of the parties' intent." Douglas, 757 F.3d at 464. The Fifth Circuit amplified that the pertinent question is: if the plaintiff signed an arbitration agreement containing a delegation clause, did the plaintiff "intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court?" Id. In answering this question, a court must conduct a limited inquiry as to whether a claim of arbitrability is "wholly groundless." Id. at 463 (quoting Qualcomm, 466 F.3d 1366, and InterDigital Commc'ns, LLC v. Int'l Trade Comm'n, 718 F.3d 1336 (Fed. Cir. 2013)).

Turning now to Jefferson Capital's claim that Bazemore's FDCPA claims are arbitrable, the Court is obligated to inquire whether Bazemore intended to bind herself forever to arbitration of any and all claims that might ever exist between her and First Bank of Delaware.[8]  It is unrealistic

---

[8] Of course, in reaching this second step of the Qualcomm test, the Court must first conclude that Bazemore

17

and implausible to conclude that she has. More specifically, this Court finds no rational basis to conclude that Bazemore ceded her federal consumer protection rights to arbitration, especially when her FDCPA claims are focused not upon the payment, calculation, or non-payment on a debt incurred with the bank but upon *the conduct* of a debt collector.[9] The Court is mindful that the FAA would have this Court broadly read the delegation clause, with its use of the terms "arising from" and "relating to" Bazemore's account, to favor arbitration; however, the Court must balance that federal policy against

---

"clearly and unmistakably intend[ed] to delegate the power to decide arbitrability to an arbitrator." Here, the Court has grave concerns related to Bazemore's acceptance of the arbitration provision with its delegation clause. The only record evidence of her acceptance is the Ryan affidavit that attests that Bazemore "would have been sent" "a form of" the Cardholder Agreement ten days after she applied for the credit card on-line. (See Ryan Aff. ¶¶ 7-8.) Jefferson Capital cannot produce an executed Cardholder Agreement, nor has it produced evidence of what information Bazemore was given at the time of application. This leaves Bazemore with the task of proving a negative: that she did not receive the Cardholder Agreement. Upon this evidence, it is only by a slight preponderance that the Court concludes that Bazemore agreed to the delegation clause. Accepting that she did, the Court moves to the next step of the Qualcomm test to determine whether Jefferson Capital's assertion of arbitrability for Bazemore's FDCPA claims is "wholly groundless."

[9] Indeed, questions of payment, calculation, or non-payment on a debt would likely be subject to arbitration. In this case, there is no evidence that Bazemore ever contested the amount of the claim or the accumulation of fees. Bazemore's case is not about the existence or amount of any debt but grounded in the methods Jefferson Capital sought to employ.

18

the strong federal interest in its consumer advocacy laws, the principal purpose of which is to protect consumers from unfair, abusive and deceptive debt collection practices. Stated another way, this Court cannot conclude that a consumer can sign away her right to seek relief in federal court under consumer protection laws absent a clear and unmistakable intent to do so. Such intent is not manifest in this case.[10] See AT&T Technologies, Inc., 475 U.S. at 648 ("[A]rbitration is a matter of contract . . . ."). Accordingly, the argument that Bazemore's FDCPA claims fall within the scope of the arbitration agreement is wholly groundless. Thus, this Court will not compel arbitration of Bazemore's FDCPA claims.

## IV. CONCLUSION

Upon the foregoing, Jefferson Capital's motion to enforce arbitration (doc. no. 17) is **DENIED**. The parties are directed to confer on a discovery plan to include the timing for class

---

[10] This conclusion is buttressed by the fact that there is scant evidence that Bazemore ever received or read the arbitration agreement and her last involvement in this account, and with First Bank of Delaware, was in 2006. Further, any right that First Bank of Delaware or its assignee had to pursue a debt ceased over two years prior to Jefferson's Capital filing the proof of claim. That said, the Court emphasizes the fact that an FDCPA claim is focused upon the conduct of a debt collector vis-à-vis a consumer, and not the contractual relationship between a lender and a borrower. Thus, the violative conduct in this case, i.e., deceptively filing time-barred proofs of claim, arises from or relates to Bazemore's account tangentially, at best.

discovery, if appropriate,[11] and the submission of Plaintiff's motion for class certification, as well as any other typical case deadlines such as expert disclosures, close of discovery and filing of dispositive motions. The parties shall submit their joint discovery plan for approval to this Court within thirty (30) days hereof. The parties should know that the Court is disinclined to allow a twelve-month discovery period in this case. In the absence of agreement, each party shall submit a proposed discovery plan for the Court's consideration.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[11] The Court is aware that both parties represented to the United States Magistrate Judge on January 9, 2015, that they did not desire to bifurcate discovery. The Court is simply providing the parties the opportunity to reconsider their positions on that point.