[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12607
_____

D.C. Docket No. 3:14-cv-00115-DHB-BKE

CHRISTINA BAZEMORE,
on behalf of herself and all others
similarly situated,

                                        Plaintiff-Appellee,

versus

JEFFERSON CAPITAL SYSTEMS, LLC,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 5, 2016)

Before TJOFLAT, ROSENBAUM, Circuit Judges, and KAPLAN,∗ District Judge.

_____

    ∗Honorable Lewis A. Kaplan, United States District Judge for the Southern District of
New York, sitting by designation.

KAPLAN, District Judge:

In 2005, plaintiff Christina L. Bazemore applied on the Internet for a credit card issued by First Bank of Delaware ("FBD").  She charged several items on the card but failed to pay in full.  In 2008, Jefferson Capital System, LLC ("JSC") acquired all right, title and interest to Ms. Bazemore's account.  Eventually, Ms. Bazemore sued JSC for an alleged violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*  JSC moved to compel arbitration in reliance on an arbitration clause said to have been contained in a cardholder agreement between Ms. Bazemore and its predecessor-in-interest.  The district court concluded that Ms. Bazemore's claim was outside the scope of the arbitration clause and therefore denied JSC's motion.  We affirm, albeit on a different ground. We hold that JSC failed to establish the existence of any agreement between Ms. Bazemore and FBD beyond the agreement to pay whatever charges Ms. Bazemore incurred by using the credit card.

## I.    FACTS

On November 18, 2005, Ms. Bazemore applied for an Imagine MasterCard issued by FBD.  It is undisputed that she did so over the Internet.  But whether she agreed to any terms and conditions in the course of doing so is unknown.  The only evidence is a declaration of Gregory Ryan, an individual employed at the time Ms. Bazemore applied for her credit card by Atlanticus Services Corporation

2

("Atlanticus"), which maintained records for such credit cards on behalf of FBD. And while he stated in conclusory terms that Ms. Bazemore "accepted the terms governing her account and opened the account" on or about November 18, 2005, he did not assert that he has any personal knowledge on that score or produce any documents to support that assertion. And those failures are quite important.

Today, virtually every Internet user is familiar with what have become known as clickwrap agreements – "agreements [formed by] requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction.'" Hancock v. Am. Tel. & Tel. Co., 701 F.3d 1248, 1255 (10th Cir. 2012) (quoting Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)). But there is no evidence of such an electronic exchange between Ms. Bazemore and either FBD or Atlanticus. In other words, there is no evidence that the Internet web page or pages that Ms. Bazemore viewed, or upon which she applied for her Imagine MasterCard, displayed or referred to any terms or conditions of the credit card she sought, much less that she was required to consent to any such terms in order to obtain her credit card.

Mr. Ryan went on to say that a "Welcome Kit" that included a Bank Credit Card Agreement (the "Cardholder Agreement") "*would have been sent*" to Ms. Bazemore about ten days after she applied for the credit card and that it "*would have*" contained "*[a] form of* the Cardholder Agreement" attached to Mr. Ryan's

declaration.  The Cardholder Agreement attached to Mr. Ryan's declaration (a) contains the arbitration clause upon which JSC relies, and (b) states that the Cardholder Agreement would become effective upon the earlier of the date the card application was approved and the first date upon which credit was extended on the account.  But Mr. Ryan did not assert that the form of Cardholder Agreement that "would have been sent" to Ms. Bazemore was the same as that attached to his declaration.  Indeed, he did not assert even that the form of Cardholder Agreement that "would have been sent" to Ms. Bazemore contained an arbitration clause of any kind, much less the clause found on the form attached to his declaration.  And although Mr. Ryan stated that he was "familiar with Atlanticus record keeping systems" and that he reviewed certain "Atlanticus business records" in preparing his declaration, he never stated that a Welcome Kit containing a Cardholder Agreement actually *was* sent to Ms. Bazemore, merely that one "would have been sent" as part of the company's "regular and ordinary practice."

After receiving the credit card, Ms. Bazemore charged several items to the card over approximately two-and-a-half months in 2005 and 2006.  Although she made several payments, she never paid her balance in full.

In 2013, Ms. Bazemore filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Georgia.  See In re

Bazemore, No. 13-30476-EJC (Bankr. S.D. Ga.).  On January 11, 2014, JSC, which had acquired all right, title, and interest to Ms. Bazemore's account, filed a proof of claim for Ms. Bazemore's alleged debt on her Imagine MasterCard account in the bankruptcy proceeding.

On September 2, 2014, Ms. Bazemore brought this putative class action against JSC in the Superior Court of Laurens County, Georgia.  Her complaint asserts that JSC violated the FDCPA by filing the proof of claim in Ms. Bazemore's bankruptcy proceeding because JSC's claim on her alleged debt was time barred.  JSC removed the case to federal court on October 13, 2014, and then moved to compel arbitration and stay proceedings pursuant to the arbitration clause in the purported Cardholder Agreement on January 22, 2015.  The district court, after briefing and oral argument, denied JSC's motion on the ground that Ms. Bazemore's FDCPA claim fell outside the scope of the arbitration clause that JSC asserted bound Ms. Bazemore.  Bazemore v. Jefferson Capital Sys., LLC, No. 14-cv-115 (DHB), 2015 WL 2220057 (S.D. Ga. May 11, 2015).  JSC timely appealed pursuant to 9 U.S.C. Section 16(a).

## II.    DISCUSSION

### A.    Standard of Review

We review *de novo* a district court's denial of a motion to compel arbitration.  Collardo v. J. & G. Transport, Inc., No. 15-14635, 2016 WL 1594581,

at *2 (11th Cir. Apr. 21, 2016).  We may affirm the district court's decision on any ground supported by the record.  Ironworkers Local Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1360 (11th Cir. 2011).

## B.    Defendant Failed to Prove the Existence of an Arbitration Agreement

If there is an arbitration agreement governing this dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.*, which "embodies a liberal federal policy favoring arbitration agreements."  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). Indeed, we have recognized that the FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Dasher v. RBC Bank (USA), 745 F.3d 1111, 1115-16 (11th Cir. 2014) (quotation marks omitted), cert. denied, 135 S. Ct. 144 (2014); see Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 301, 130 S. Ct. 2847, 2858-59 (2010).  Nonetheless, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made."  Dasher, 745 F.3d at 1116 (quotation marks omitted); see Granite Rock, 561 U.S. at 301, 130 S. Ct. at 2858-59 (directing courts to "apply[] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement").  The threshold question of whether an arbitration agreement exists at all is "simply a matter of

contract." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995).  Absent such an agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum."  Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004).

Here, plaintiff argues that JSC failed to establish that she ever entered into an arbitration agreement with JSC's predecessor-in-interest.  This requires that we address the law governing the onus of proof with respect to the existence of an agreement to arbitrate.

Prior to First Options of Chicago, Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992), and other cases in this Circuit and its predecessor, the Fifth Circuit, had held that a party resisting a motion to compel arbitration on the ground that no arbitration agreement existed could not succeed absent "'an unequivocal denial that the agreement had been made . . . and some evidence . . . to substantiate the denial.'"  Id. at 854 (alterations omitted) (quoting T & R Enters., Inc. v. Cont'l Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980)).  A year after Chastain, in Wheat, First Securities, Inc. v. Green, 993 F.2d 814 (11th Cir. 1993), we reiterated that "[t]he party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial."  Id. at 817 (quotation marks omitted).

The Supreme Court decided <u>First Options of Chicago</u> two years after <u>Green</u>. It there explained that "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  514 U.S. at 944, 115 S. Ct. at 1924.

Since then, this Circuit repeatedly has emphasized that "*state law* generally governs whether an enforceable contract or agreement to arbitrate exists."  <u>Caley</u>, 428 F.3d at 1368 (emphasis added) (citing <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 (1987)).  For example, in <u>Caley</u> we said that "in determining whether a binding [arbitration] agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."  <u>Id.</u> Even more recently, in <u>Dasher</u>, we explained that "when determining whether an arbitration agreement exists, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts,'" and there applied North Carolina law to determine that the parties had not entered into an arbitration agreement.  745 F.3d at 1116 (quoting <u>First Options of Chicago</u>, 514 U.S. at 944, 115 S. Ct. at 1924).  Moreover, in the nearly quarter-century since <u>Chastain</u> and <u>Green</u>, no published decision of this Court has cited either case for the proposition

that the burden is on the party denying the existence of an arbitration agreement to deny its existence "unequivocally" and substantiate that denial with proof.[1]

As the foregoing demonstrates, we consistently have held that state law governs the issue of the existence of an agreement to arbitrate under the FAA since First Options of Chicago was decided.  Here, plaintiff asserts, and defendant appears to agree, that Georgia law applies.  Appellee's Br. at 14; see Appellant's Reply Br. at 8 (relying on Georgia substantive contract law).  Accordingly, we apply Georgia law to determine whether Ms. Bazemore and FBD entered into an arbitration agreement.

In Georgia, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." Ga. Code Ann. § 13-3-1.  The element of assent requires "'(a) a meeting of the minds (b) on the essential terms of the contract.'"  Regan v. Stored Value Cards, Inc., 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015) (quoting John K. Larkins, Jr., Ga.

---

[1]Four unreported decisions after First Options of Chicago have cited Chastain and/or Green for this proposition.  See Akpele v. Pac. Life Ins. Co., No. 15-11529, 2016 WL 1319354, at *3 (11th Cir. Apr. 5, 2016); Mishra v. Doctors Hosp. of Augusta, LLC, 354 F. App'x 421, 422 (11th Cir. 2009); Madura v. Countrywide Home Loans, Inc., 344 F. App'x 509, 514 & n.7 (11th Cir. 2008); Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008).  But a review of those decisions and the parties' briefs in those cases demonstrates that the issue whether a binding arbitration agreement existed was governed by state law as opposed to the previous rule of Chastain/Green and their predecessors was not litigated in any of them.  Accordingly, the passing references in those cases to the standard for determining the existence of arbitration agreements "were mere dicta."  See In re MDL-1824 Tri-State Water Rights Litig., 644 F.3d 1160, 1189 n.21 (11th Cir. 2011).

Contracts Law and Litigation § 3:2 (2d ed.)), aff'd sub nom. Reagan v. Stored

Value Cards, Inc., 608 F. App'x 895 (11th Cir. 2015).  The existence and terms of

a contract must be proven by a preponderance of the evidence.  Wallace v. Triad

Sys. Fin. Corp., 442 S.E.2d 476, 478 (Ga. Ct. App. 1994); Gentry v. Beverly

Enters.-Ga., Inc., 714 F. Supp. 2d 1225, 1229 (S.D. Ga. 2009).  "The party

asserting the existence of a contract has the burden of proving its existence and its

terms."  Jackson v. Easters, 379 S.E.2d 610, 611 (Ga. Ct. App. 1989); see Yates v.

CACV of Colo., 693 S.E.2d 629, 634 (Ga. Ct. App. 2010) ("As the party seeking

to enforce the alleged arbitration agreement, CACV bore the burden of proving the

existence of such a valid and enforceable agreement.").

JSC attempted to satisfy this burden by the declaration of Gregory Ryan, an

"executive correspondence manager" at Atlanticus.  But Mr. Ryan's declaration is

woefully inadequate.

*First*, he states that he "was able to ascertain that Plaintiff had applied for the

[credit card] over the internet" and that plaintiff "accepted the terms governing her

account."  But Mr. Ryan does not explain how he knows this, nor does he

substantiate the claim with documentary proof.  More fundamentally, there is no

indication what "the terms governing her account" were, and there is no evidence

concerning what, if any, clickwrap agreement appeared on plaintiff's computer

screen when she applied for her credit card.  The most that can be said is that she at

least implicitly agreed to pay the card issuer or its assignee for any goods or

services she charged to the card.  But that does nothing to advance JSC's argument

in favor of compelling arbitration.  JSC has presented no competent evidence as to

what, if any, terms plaintiff agreed to when ordering her credit card.  In particular,

it has presented no competent evidence that she entered into any relevant

arbitration agreement.  Accordingly, it cannot compel her to arbitrate on the basis

of such terms.

*Second*, Mr. Ryan says that a Welcome Kit including a Cardholder

Agreement with an arbitration clause "*would have been sent* to Plaintiff" within ten

days of her online application in the ordinary course of Atlanticus's business.

(Emphasis added.)  JSC further argues that it is entitled to a presumption under the

"mailbox rule"[2] that plaintiff received the Welcome Kit.  But Mr. Ryan has no

personal knowledge that a Welcome Kit in fact was sent to Ms. Bazemore.  Nor

does he claim that he reviewed any records showing that a Welcome Kit was sent

to her. Accordingly, because JSC has presented no competent evidence that a

Welcome Kit containing the arbitration agreement it now seeks to enforce ever was

mailed to Ms. Bazemore, and it cannot compel her to arbitrate pursuant to any such

agreement.  Cf. Williams v. MetroPCS Wireless, Inc., No. 09-22890-CIV, 2010

---

[2]"[T]he common law has long recognized a rebuttable presumption that an item properly
mailed was received by the addressee."  Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1239
(11th Cir. 2002) (emphasis added) (quotation marks and alteration omitted).

WL 62605, at *10 (S.D. Fla. Jan. 5, 2010) (denying a motion to compel arbitration

where "there [was] no evidence that [plaintiff] ever received the Agreement or was

made aware of it in any documents . . . or in any text messages relaying her bills").

*Third*, even assuming that the evidence established that a Welcome Kit was

sent to Ms. Bazemore, it does not show that the Welcome Kit included the

arbitration clause upon which JSC relies or any relevant variant.  Mr. Ryan

purports to attach to his declaration "*[a] form* of the Cardholder Agreement that

would have been sent to Plaintiff" as evidence of the language contained in the

arbitration clause JSC seeks to enforce.  (Emphasis added.)  He does not, however,

attach a copy of the particular agreement that allegedly "would have been" mailed

to plaintiff.  And that is not an accident -- JSC conceded during oral argument that

it did not "have an exact copy of what was sent" to plaintiff.  Nor does Mr. Ryan

say that the language of the form of agreement attached to his declaration is

identical to anything that "would have been sent" to Ms. Bazemore.  This

distinction is critical.  As plaintiff pointed out during oral argument, the forms of

such agreements change frequently, often in response to changes in the substantive

law.  There is no way of knowing whether the arbitration language contained in the

form of the agreement attached to Mr. Ryan's declaration, or any relevant variant

of it, appeared in the form allegedly mailed to Ms. Bazemore.  Accordingly, JSC

did not meet its burden of proving that plaintiff assented to the "essential terms of

12

the contract" for the simple reason that the terms of exactly what, if anything, Ms.

Bazemore agreed to when she applied for the credit card are unknown.  See

Herssein Law Grp. v. Reed Elsevier, Inc., 594 F. App'x 606, 608 (11th Cir. 2015)

("'It is a basic tenet of contract law that a party can only advance a claim of breach

of written contract by identifying and presenting the actual terms of the contract

allegedly breached.'") (quoting Harris v. Am. Postal Workers Union, 198 F.3d 245

(6th Cir.1999)); see also Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657,

664 (11th Cir. 2015) (affirming holding that plaintiff failed to state a breach of

contract claim under Georgia law when contract was not attached to complaint).

It is true, as JSC argues, that courts routinely enforce unsigned service

contracts – including credit card contracts – where the contract is sent to a recipient

who thereafter demonstrates his or her assent to its terms by using the service

provided.  And there is no dispute here that plaintiff received and used a credit card

provided by JSC's predecessor-in-interest.  But the cases on which JSC relies all

are distinguishable on the grounds that the parties seeking to enforce contractual

provisions in those cases provided the court with (1) competent evidence that the

contract *was sent* to the plaintiff and (2) a copy of the *actual* contract they were

seeking to enforce.[3]  Here, defendant has done neither.  Nor has defendant

---

[3]See Athon v. Direct Merchs. Bank, No. 06-cv-1 (CAR), Aff'd of Eric Hagenau [DI 16-2] at ¶¶ 10-11 & Ex. C (M.D. Ga. Apr. 3, 2006) (stating that the credit card provider's records indicated that a "fulfillment package" containing an arbitration agreement "was mailed" to the

provided evidence concerning the contents of any clickwrap agreement to which plaintiff assented while ordering her credit card online.  Accordingly, defendant has not met its burden under Georgia law to prove the existence and terms of the arbitration agreement it seeks to enforce.  Its motion to compel arbitration should have been denied.[4]  See Yates, 693 S.E.2d at 634-35 (holding that movant failed to prove existence of valid arbitration agreement when "[movant] did not submit a copy of any credit card application or agreement executed by [cardholder]; nor did it submit an affidavit or other evidence showing the date [cardholder] entered into a credit agreement with MBNA and that the photocopied terms and conditions [attached to the motion to compel arbitration] represented the terms and conditions in effect for all MBNA credit agreements at that time"; and movant also "failed to

---

plaintiff, and attaching a copy of the arbitration agreement); Losapio v. Comcast Corp., No. 10-cv-3438 (RWS), Decl. of Mary Kay Schultz [DI 2-1] at ¶¶ 11-12 & Ex. E (N.D. Ga. Oct. 29, 2010) (stating that a "Subscriber Agreement" containing an arbitration provision "was mailed to Plaintiff" and attaching a copy of the agreement); Honig v. Comcast of Ga. I, LLC, No. 07-cv-1839 (TCB), Decl. of James Andrew Macke [DI 8-2] at ¶¶ 5-6 & Ex. A (N.D. Ga. Aug. 23, 2007) (stating that defendant "provided [plaintiff] with the Welcome Kit" containing a "Subscriber Agreement" that included an arbitration provision "when her [cable] service was installed" and attaching a copy of the agreement); Sanders v. Comcast Cable Holdings, LLC, No. 07-cv-918 (VMC), Decl. of Bill Ferry [DI 9-2] at ¶¶ 14-17 & Ex. B (M.D. Fla. Oct. 19, 2007) (stating that an "Arbitration Agreement was mailed" to four plaintiffs and attaching a copy of the agreement).

[4]In so holding, we disagree with the district court's apparent conclusion that the parties entered into a valid arbitration agreement.  See Bazemore, 2015 WL 2220057, at *5-6.  Further, because we affirm the district court's decision on the threshold issue of contract formation, we decline to address the question whether plaintiff's FDCPA claim falls within the scope of the arbitration clause contained in the form attached to Mr. Ryan's declaration, which may or may not have been sent to Ms. Bazemore, or whether this Circuit recognizes a "wholly groundless" exception to an arbitration agreement's delegation clause.

offer any evidence showing . . . that the amendments [to the credit card application containing the arbitration clause] were sent to [the cardholder]").

## C. The Motion To Compel Arbitration Should Have Been Denied Without Trial

JSC contended during oral argument that we should remand for trial if we conclude that it failed to prove the existence of the alleged arbitration agreement. It relies on Section 4 of the FAA, which states that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Thus, it would have us hold, essentially, that a party cannot lose a motion to compel arbitration for failure to prove that an arbitration agreement exists without being afforded a second bite at the apple – an opportunity to prove the agreement's existence at trial. This we decline to do.

Although we have not addressed in a published opinion the standard for determining whether a trial is necessary to determine the existence of an arbitration agreement, several of our sister circuits have likened the standard to one for summary judgment. The Third Circuit, for example, has explained that "'[o]nly when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,

636 F.2d 51, 54 & n.9 (3d Cir. 1980)).  The Tenth Circuit stated similarly in a recent opinion that "[w]hen it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice . . . . In these circumstances, the [FAA's] summary trial can look a lot like summary judgment."  Howard v. Ferrellagas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014); accord Neb. Mach. Co. v. Cargotec Solutions, LLC, 762 F.3d 737, 743 (8th Cir. 2014).

We agree with our sister circuits that a summary judgment-like standard is appropriate and hold that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if "there is no genuine dispute as to any material fact" concerning the formation of such an agreement.  Fed. R. Civ. P. 56(a).  A dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'"  Baloco v. Drummond Co., 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986)), cert. denied, 136 S. Ct. 410 (2015).  "This court has consistently held that conclusory allegations without specific supporting facts have no probative value" for a party resisting summary judgment.  See Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation marks omitted).

Here, the competent evidence offered by JSC is insufficient to raise a genuine issue of fact as to the existence of an arbitration agreement between its predecessor-in-interest and Ms. Bazemore.  As explained above, JSC provides no competent evidence that an arbitration agreement ever was sent to plaintiff.  Nor does JSC provide evidence that the terms it seeks to enforce were contained in the form of any agreement that "would have been sent" to Ms. Bazemore.  At best, JSC's statement that "a form" of the arbitration agreement attached to its motion – a form of unknown terms of which it concededly has no copy – "would have been sent" to plaintiff is no more than a "mere scintilla of evidence" in support of its position, insufficient to create a genuine dispute of material fact.  See Baloco, 767 F.3d at 1246.

The Court acknowledges that plaintiff, too, has provided almost no evidentiary support for her contention that she never entered into an arbitration agreement with FBD.  Plaintiff has not, for example, submitted an affidavit swearing under oath that she never received the Welcome Kit referenced in Mr. Ryan's declaration.  But it is defendant's burden under Georgia law to prove the existence and terms of the contract it wishes to enforce.  Moreover, entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

As defendant offered no competent evidence to demonstrate the existence of

a genuine issue of material fact concerning the existence of an arbitration

agreement, its motion to compel arbitration must be denied as a matter of law

without the need for a trial.

### III.   CONCLUSION

We **AFFIRM** the denial of JSC's motion to compel arbitration and stay

proceedings, albeit on different grounds than those reached by the district court.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 05, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  15-12607-CC
Case Style:  Christina Bazemore v. Jefferson Capital Systems, LLC
District Court Docket No:  3:14-cv-00115-DHB-BKE

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, CC at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs